Kristin L. Martin (Nevada Bar No. 7807)
Eric B. Myers (Nevada Bar No. 8588)
McCRACKEN, STEMERMAN &
HOLSBERRY
1630 Commerce Street, Suite A-1
Las Vegas, Nevada 89102
Telephone:   (702) 386-5107
Facsimile:   (702) 386-9848
E-mail:  klm@dcbsf.com

*Attorneys for Defendant Bartenders Union
Local 165*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DAVID STECKBECK, STEVEN ALBA,
ROBERT BLEDSOE, all individually,

       Plaintiffs,

     vs.

BARTENDERS UNION LOCAL 165; a
Nevada labor entity; DOES 1-10,. Inclusive;
ROE CORPORATIONS 1-10, inclusive,

       Defendants.

CASE NO. 2:14-cv-00323-RFB-CWH

**DEFENDANT BARTENDER UNION
LOCAL 165's MOTION FOR
SUMMARY JUDGMENT**

     Defendant Bartenders Union Local 165 moves for an order granting summary judgment on Plaintiffs' Second Amended Complaint against Local 165 pursuant to Federal Rule of Civil Procedure 56.  This motion is based on the attached memorandum of law and the Affidavits of Lana Loebig and Kristin Martin.

Dated: September 22, 2015     McCRACKEN, STEMERMAN & HOLSBERRY

                                  Kristin L. Martin
                                  *Attorneys for Defendant Bartenders Union Local 165*

**DEFENDANT BARTENDERS UNION LOCAL 165'S MOTION FOR SUMMARY JUDGMENT**

Kristin L. Martin (Nevada Bar No. 7807)
Eric B. Myers (Nevada Bar No. 8588)
McCRACKEN, STEMERMAN &
HOLSBERRY
1630 Commerce Street, Suite A-1
Las Vegas, Nevada 89102
Telephone:   (702) 386-5107
Facsimile:   (702) 386-9848
E-mail:  klm@dcbsf.com

*Attorneys for Defendant Bartenders Union
Local 165*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DAVID STECKBECK, STEVEN ALBA, ROBERT BLEDSOE, all individually, <br><br> Plaintiffs, <br><br> vs. <br><br> BARTENDERS UNION LOCAL 165; a Nevada labor entity; DOES 1-10,. Inclusive; ROE CORPORATIONS 1-10, inclusive, <br><br> Defendants. | CASE NO. 2:14-cv-00323-RFB-CWH <br><br> **MEMORANDUM OF LAW IN SUPPORT OF BARTENDERS UNION LOCAL 165'S MOTION FOR SUMMARY JUDGMENT** |

**MEMORANDUM OF LAW IN SUPPORT OF BARTENDERS UNION LOCAL 165'S MOTION
FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................1

STATEMENT OF MATERIAL FACTS NOT GENUINELY IN DISPUTE...............................1

    A.    Background Facts.....................................................................................1

    B.    Plaintiffs' Work History..........................................................................3

    C.    The Memorandum of Understanding.........................................................4

    D.    Plaintiffs' Grievance ..............................................................................6

    E.    Plaintiffs' Unfair Labor Practice Charges................................................7

    F.    Plaintiffs' Theory ..................................................................................8

ARGUMENT .........................................................................................................9

    A.    Summary Judgment Standard ..................................................................9

    B.    Local 165 did not violate its duty of fair representation to Plaintiffs by deciding that the August 2013 grievance was invalid ...........................9

        1.    Local 165 knew the facts so no investigation was necessary ......................10

        2.    A union's exercise of judgment about how to interpret a collective bargaining agreement cannot violate the union's duty of fair representation...........................................................................11

        3.    Plaintiff's grievance does not seek a remedy for Aria's breach of the Collective Bargaining Agreement..........................................13

        4.    The National Labor Relations Board already rejected Plaintiffs' theory ....14

    C.    Local 165 did not violate its duty of fair representation to Plaintiffs by entering into the Memorandum of Agreement..........................................14

CONCLUSION .....................................................................................................17

i

1

2

## TABLE OF AUTHORITIES

3

Page(s)

4

**Federal Cases**

5

*Air Line Pilots Ass'n v. O'Neill,*

6
    499 U.S. 65 (1991) ...................................................................................................14, 15

7

*Anderson v. Liberty Lobby,*

8
    477 U.S. 242 (1986) ......................................................................................................9

9

*Castelli v. Douglas Aircraft Co.,*

10
    752 F.2d 1480 (9th Cir.1985) ...............................................................................10, 13

11

*Cole v. International Union,*

12
    533 F.3d 932 (8th Cir. 2008) ......................................................................................13

13

*Conkle v. Jeong,*

14
    73 F.3d 909 (9th Cir. 1995) .......................................................................................13

15

*Crider v. Spectrulite Consortium, Inc.,*

16
    130 F.3d 1238 (7th Cir. 1997) ...................................................................................13

17

*DelCostello v. Teamsters,*

18
    462 U.S. 151 (1983) ...................................................................................................10

19

*Emporium Capwell Co. v. Western Addition Community Organization,*

20
    420 U.S. 50 (1975) .....................................................................................................15

21

*Evangelista v. Inland Boatmen's Union of the Pacific,*

22
    777 F.2d 1390 (9th Cir. 1985) ...................................................................................11

23

*Ford Motor Co. v. Huffman,*

24
    345 U.S. 330 (1953) ...................................................................................................15

25

*Hines v. Anchor Motor Freight, Inc.,*
    424 U.S. 554 (1976) ...................................................................................................10

26

*Humphrey v. Moore,*
    375 U.S. 335 (1964) ...................................................................................................15

27

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*

28
    495 U.S. 574 (1986) ....................................................................................................9

MEMORANDUM OF LAW IN SUPPORT OF BARTENDERS UNION LOCAL 165'S MOTION
FOR SUMMARY JUDGMENT

*Peterson v. Kennedy*,
   771 F.2d 1244 (9th Cir. 1985) ..................................................................................10

*Salinas v. Milne Truck Lines, Inc.*,
   846 F.2d 568 (9th Cir. 1988) ....................................................................................13

*Slevira v. Western Sugar Co.*,
   200 F.3d 1218 (9th Cir. 2000) ..................................................................................13

*Stevens v. Moore Business Forms, Inc.*,
   18 F.3d 1443 (9th Cir. 1994) .............................................................................11, 13

*T.W. Elec. Svc., Inc. v. Pacific Elec. Contractors Ass'n*,
   809 F.2d 626 (9th Cir. 1987) ......................................................................................9

*Vaca v. Sipes*,
   386 U.S. 171 (1967).............................................................................................10, 14

**Federal Statutes**

29 U.S.C. § 158(b) ..........................................................................................................10

29 U.S.C. § 185 .........................................................................................................10, 14

**Rules**

Fed. R. Civ. P. 56(c).........................................................................................................9

Local Rule 56-1 ................................................................................................................1

iii

**MEMORANDUM OF LAW IN SUPPORT OF BARTENDERS UNION LOCAL 165'S MOTION FOR SUMMARY JUDGMENT**

# INTRODUCTION

This case involves a single claim for breach of the duty of fair representation by Defendant Bartenders Union Local 165 ("Local 165"). It should be dismissed because Plaintiffs David Steckbeck, Steven Alba and Robert Bledsoe (collectively, "Plaintiffs") challenge only Local 165's interpretation of a collective bargaining agreement. It is well-settled that decisions by a union which involve the exercise of judgment cannot subject a union to duty of fair representation liability.

Plaintiffs were Seasonal Pool Bartenders who were allowed to work beyond the end of the pool season in 2011 and 2012 in violation of the Collective Bargaining Agreement and the rights of nonseasonal bartenders whose seniority entitled them to that work. When Local 165 learned that this had occurred, it insisted that Aria terminate Plaintiffs (along with all other Seasonal Pool Bartenders) at the end of the pool season. Plaintiffs' argument that Local 165 was obligated to adopt Plaintiffs' contrary interpretation of the Collective Bargaining Agreement has no merit, and, as a matter of law, cannot be the basis for a duty of fair representation claim.

# STATEMENT OF MATERIAL FACTS NOT GENUINELY IN DISPUTE

Pursuant to Rule 56-1 of the Local Rules of this Court, Local 165 provides this Statement of Material Facts Not Genuinely in Issue.[1]

**A.     Background Facts**

1.      Local 165 has represented a bargaining unit of employees at the Aria Resort and Casino ("Aria") since Aria opened in December 2009. Local 165's bargaining unit includes

---

[1] This Statement cites evidence from the following sources: the Affidavit of Lana Loebig, the deposition testimony of Plaintiffs David Steckbeck, Steven Alba and Robert Bledsoe, and Plaintiffs' responses to interrogatories. The interrogatory responses are attached as Exhibits A, B and C to the Affidavit of Kristin Martin. The deposition transcript and exhibits for Steckbeck are attached as Exhibits D and E to the Affidavit of Kristin Martin. The deposition transcript and exhibits for Alba attached as Exhibits F and G to the Affidavit of Kristin Martin. The deposition transcript and exhibits for Bledsoe are attached as Exhibits H and I to the Affidavit of Kristin Martin.

MEMORANDUM OF LAW IN SUPPORT OF BARTENDERS UNION LOCAL 165'S MOTION
FOR SUMMARY JUDGMENT

1  bartenders who work in the casino at Aria and bartenders who work at the Aria pool.  Loebig
2  Aff. ¶ 3.

3      2.    Local 165 entered into a Collective Bargaining Agreement with Aria initially for
4  the period December 12, 2009 to May 31, 2012 ("the Collective Bargaining Agreement").
5  Local 165 and Aria subsequently agreed to extend the term of the Collective Bargaining
6  Agreement so that it was still in effect as of August 30, 2013.  Loebig Aff. ¶ 4 & Exh. A.

7      3.    Article 10.03 of the Collective Bargaining Agreement provides:

8  A seasonal employee is an employee hired as a temporary employee to work in the
9  Employer's pool food and beverage area anytime from the opening of the pool
season to the closing of the pool season.  These employees have bidding rights
10  within this classification only.  Regular employees who transfer into this new
classification will be assigned to the bottom of the part-time seniority list of
11  whatever classification they subsequently bid into.  Seasonal classification shall be
12  limited to: Pool Cocktail Servers, Pool Bartenders, Pool Apprentice Bartenders,
Pool Food Servers, Pool Bus Persons, Pool Food & Beverage Cashiers, Pool
13  Fountain Workers, Pool Cooks, and Pool Pantry Workers, Hostperson, Cook
14  Helper, Bar Porter.

15  Loebig Aff. ¶ 4 & Exh. A.  This case concerns Pool Bartenders whose employment was
16  governed by Article 10.03.  Bledsoe Depo. 91:12-18; Alba Depo. 75:4-14.

17      4.    The pool at Aria remains open all year, but business slows substantially in the
18  winter months.  Aria has the prerogative to determine when the pool season begins and ends
19  each year.  Alba Depo. 22:19-25.

20      5.    Under Article 10.03, Seasonal Pool Bartenders' employment ends at the end of the
21  pool season each year.  Seasonal Pool Bartenders do not have any right to resume working at the
22  start of the subsequent pool season.  Seasonal Pool Bartenders can reapply to work as Seasonal
23  Pool Bartenders in subsequent pool seasons, but Aria is not obligated to rehire them.  Loebig
24  Aff. ¶ 6; Alba Depo. 25:1-6, 27:3-19. Bledsoe Depo. 24:24-25:10, 26:25-27:16, 63:2-12.

25      6.    As business slowed at the end of the 2010, 2011 and 2012 pool seasons, Aria
26  terminated the employment of all except two or three of the Seasonal Pool Bartenders.  In those
27  years, Aria allowed the Seasonal Pool Bartenders whose employment it did not terminate to
28  //

2

1  continue to work at the pool during the winter months.  Steckbeck Depo. 30:11-31:3, 38:16-

2  39:21; Alba Depo. 33:6-18.

3        7.      Aria's failure to terminate all Seasonal Pool Bartenders at the end of the pool

4  season violated Article 10.03 of the Collective Bargaining Agreement.  Loebig Aff. ¶ 7;

5  Steckbeck Depo. 114:5-9, 183:13-18; Bledsoe Depo. 92:8-14, 94:1-9.  Aria also violated the

6  Collective Bargaining Agreement by assigning Seasonal Pool Bartenders to work at the pool

7  after the pool season ended.  Under Articles 10.01, 10.02 and 20.04 of the Collective Bargaining

8  Agreement, such work should have been assigned to nonseasonal bartenders according to

9  seniority.  Loebig Aff. ¶ 7 & Exh. A.

10        8.      Local 165 did not learn until spring of 2013 that Aria had failed to terminate

11  Seasonal Pool Bartenders at the end of the pool season in 2010, 2011 and 2012.  Until the spring

12  of 2013, Local 165 believed that Aria was complying with the Collective Bargaining Agreement

13  by employing Seasonal Pool Bartenders only during each pool season.  Loebig Aff. ¶ 7;

14  Steckbeck Depo. 48:6-49:1, 50:5-19.

15  **B.    Plaintiffs' Work History**

16        9.      Plaintiffs David Steckbeck and Stephen Alba began working at Aria in March

17  2010 as Seasonal Pool Bartenders.  Steckbeck Depo. 19:22-23, 21:17-22:11 & Exh. 3; Alba

18  Depo. 16:21-22, 17:4-6, 18:7-12 & Exh. 26.  Steckbeck understood this to mean that he "would

19  be laid off at the end of the season" which is what Article 10.03 of the Collective Bargaining

20  Agreement provides.  Steckbeck Depo. 25:7-18.

21        10.     Consistent with Article 10.03 of the Collective Bargaining Agreement, Steckbeck

22  and Alba were terminated at the end of the 2010 pool season.  Steckbeck Depo. 27:19-28:8,

23  114:1-4 & Exh. 5; Alba Depo. 23:1-9, 25:1-6, 26:9-27:2 & Exh. 29.

24        11.     Steckbeck and Alba were rehired to work as Seasonal Pool Bartenders in March

25  and April 2011 respectively for the 2011 pool season.  Steckbeck Depo. 33:19-34:4, 34:25-36:7

26  & Exh. 6; Alba Depo. 27:22-28:22.

27        12.     In March 2011, Plaintiff Robert Bledsoe was hired as a Seasonal Pool Bartender

28  for the 2011 pool season.  Bledsoe Depo. 22:19-20, 23:5-18.

**MEMORANDUM OF LAW IN SUPPORT OF BARTENDERS UNION LOCAL 165'S MOTION
FOR SUMMARY JUDGMENT**

13.     In late November or early December 2011, Aria managers held a meeting with Plaintiffs in which the managers offered Plaintiffs the opportunity to work during the winter after the end of the pool season.  Bledsoe Depo. 28:16-29:7.  The Aria managers did not promise Bledsoe that he would be allowed to work each winter.  Bledsoe Depo. 63:13-23.

14.     Local 165 was not told about this meeting or that Aria allowed Plaintiffs to continue working at the pool after the end of the pool season.  Bledsoe Depo. 30:1-3; Loebig Dec ¶ 7.

15.     Steckbeck, Bledsoe and Alba were not terminated at the end of the 2011 or 2012 pool seasons.  Steckbeck Depo. 38:23-24, 53:6-15; Alba Depo. 31:7-12, 33:3-5; Bledsoe Depo. 27:17-25, 35:7-18, 64:9-15.

16.     After the pool seasons ended in 2011 and 2012, only one shift was available for a pool bartender.  Plaintiffs shared that shift and decided who would work when.  Steckbeck Depo. 46:7-48:17; Bledsoe Depo. 28:16-29:7, 35:7-36:21.

17.     When the pool seasons began in 2012 and 2013, Plaintiffs resumed working separate shifts at the pool.  Steckbeck Depo. 43:20-44:3, 45:1-12, 55:11-17; Bledsoe Depo. 31:4-19, 33:16-23, 34:23-35:15; Alba Depo. 32:17-33:18.

C.      **The Memorandum of Understanding**

18.     Local 165 has, as a long-standing objective, the elimination of the Seasonal Pool Bartender classification in all of the bargaining units that it represents.  Local 165 disfavors the Seasonal Pool Bartender classification because Seasonal Pool Bartenders have no guarantee of continued employment or re-employment from year-to-year and do not receive the same benefits as non-seasonal bartenders.  Non-seasonal bartenders are guaranteed continued employment from year-to-year, accrue seniority in the bartender classification, are entitled to part-time board shifts during the non-pool season, and receive the same benefits as other bargaining unit employees.  Loebig Aff. ¶ 9 & Exh. E.

19.     Local 165 believes that, as a whole, the interests of the bartenders whom it represents are better served when bartending work is not fragmented into multiple

//

4

1  classifications. This is because fewer classifications creates more opportunities for bartenders to

2  bid for work on their preferred shifts. Loebig Aff. ¶ 10.

3       20.    In 2009, Local 165 entered into a Memorandum of Agreement with the Luxor that

4  eliminated use of seasonal bartenders at the Luxor's pool. Loebig Aff. ¶ 11 & Exh. B. In 2011,

5  Local 165 entered into a Memorandum of Agreement with Mandalay Bay that eliminated use of

6  seasonal bartenders at Mandalay Bay's pool, which is called "The Beach." Loebig Aff. ¶ 12 &

7  Exh. C. In 2011, Local 165 entered into a Side Letter Agreement with MGM Grand Hotel that

8  eliminated use of seasonal bartenders at the MGM Grand Hotel's pool. Loebig Aff. ¶ 13 & Exh.

9  D. In January 2013, Local 165 entered into a Memorandum of Agreement with Monte Carlo

10  Resort & Casino that eliminated use of seasonal bartenders at Monte Carlo's pool. Loebig Aff.

11  ¶ 14 & Exh. E.

12       21.    In about May 2015, Aria's Employee Relations Director Tamera Lelyk told Local

13  165 that Aria intended to use "model bartenders" in two venues that had previously been staffed

14  by regular bartenders. Local 165 requested that, in exchange, Aria stop using the Seasonal Pool

15  Bartender classification at the pool. Local 165 President Lana Loebig and Local 165 Secretary-

16  Treasurer Terry Greenwald had several discussions with Aria management about these

17  proposals. In the context of these discussions, Local 165 learned for the first time that Aria had

18  violated Article 10.03 of the Collective bargaining Agreement by not terminating Plaintiffs'

19  employment at the end of the pool season in 2011 and 2012. Loebig Aff. ¶ 15.

20       22.    On about May 16, 2013, Local 165 and Aria entered into a Memorandum of

21  Agreement ("the Memorandum of Agreement"). The Memorandum of Agreement provides, in

22  paragraph 7, that "All current seasonal Pool Bartenders will be separated from employment at

23  the completion of the 2013 'pool season' as designated by the Employer and in accordance with

24  Article 10.03 (Seasonal Pool Food and Beverage Employees) in the CBA." Paragraph 7

25  requires Aria to comply with Article 10.03 of the Collective Bargaining Agreement. Loebig

26  Aff. ¶¶ 16-17 & Exh. F.

27       23.    The Memorandum of Agreement also provides, in paragraphs 1 to 6, that

28  beginning in the 2014 season, Pool Bartender jobs will be filled by the most senior bartenders

**MEMORANDUM OF LAW IN SUPPORT OF BARTENDERS UNION LOCAL 165'S MOTION
FOR SUMMARY JUDGMENT**

1  who bid for the positons and establishes rules for bartenders to move between pool bartending

2  jobs and other bartending jobs.  Loebig Aff. ¶ 18 & Exh. F.  These paragraphs of the

3  Memorandum of Agreement eliminated Aria's right to use the Seasonal Pool Bartender

4  classification in pool seasons after the 2013 pool season ended.  Loebig Aff. ¶ 18.

5      24.    Consistent with Article 10.03 of the Collective Bargaining Agreement and

6  paragraph 7 of the Memorandum of Agreement, Plaintiffs were terminated at the end of the

7  2013 pool season.  Bledsoe Depo.  64:9-15, 67:3-17, 84:7-23 & Exh. 43; Alba Depo. 82:11-83:4

8  & Exh. 31.

9  **D.**    **Plaintiffs' Grievance**

10      25.    On about August 29, 2013, Plaintiffs filed a grievance with Local 165 because

11  they were told that they would be terminated at the end of the 2013 pool season.  The grievance

12  states, "We have been informed we are being termed at the end of season.  Since we have not

13  been laid off in 4 years seasons, we should be grandfathered in, past practice dictates we should

14  retain our positions and seniority during the upcoming transition." Steckbeck Depo. 119:23-

15  120:19 & Exh. 8; Alba Depo. 71:20-73:8; Bledsoe Depo. 78:20-81:7.

16      26.    On about August 29 or 30, 2013, Local 165's President Lana Loebig reviewed the

17  grievance and determined that it was facially invalid.  Loebig did not investigate any facts

18  before making that determination because she already knew the relevant facts.  In the context of

19  negotiations that produced the Memorandum of Agreement, Loebig had learned that Plaintiffs

20  were Seasonal Pool Bartenders who had not been terminated at the end of the 2011 and 2012

21  pool seasons as Article 10.03 of the Collective Bargaining Agreement required.  Loebig also

22  knew that Article 10.03 of the Collective Bargaining Agreement and paragraph 7 of the

23  Memorandum of Agreement required that Plaintiffs be terminated at the end of the 2013 pool

24  season.  Loebig Aff. ¶ 19.

25      27.    On about August 30, 2013, Loebig and Greenwald called each of the Plaintiffs and

26  informed them that the grievance was invalid.  Loebig Aff. ¶ 20; Steckbeck Depo. 120:24-121:6;

27  Alba Depo. 74:1-10; Bledsoe Depo. 82:22-83:19.

28

**MEMORANDUM OF LAW IN SUPPORT OF BARTENDERS UNION LOCAL 165'S MOTION FOR SUMMARY JUDGMENT**

1    28.    Even if Local 165 had not entered into the Memorandum of Agreement, Local 165

2  would have insisted that Aria terminate Plaintiffs' employment at the end of the 2013 pool

3  season as Article 10.03 requires.  Loebig Aff. ¶ 22.

4  **E.    Plaintiffs' Unfair Labor Practice Charges**

5    29.    On or about September 25, 2013, each of the Plaintiffs filed an unfair labor

6  practice charge with the National Labor Relations Board alleging that Local 165 violated the

7  National Labor Relations Act by the same conduct that is the subject of this case.  Each of the

8  charges contains that following allegations and is signed by Plaintiffs' counsel:

9    Grievant works as a seasonal employee at the Aria Hotel as a pool bartender.
10   Grievant advised he is being terminated after the end of the pool season and
     replaced by other union member employees, despite his seniority and years
11   working in the same position at the hotel.  Grievant contends that the past practice
     should allow for him to retain his position and seniority to work the pool area at
12   the Aria Hotel.  The Union has refused to acknowledge this past practice or the
13   concerns/complaints of Grievant and has refused to represent Grievant's interests
     related to this matter.  Union refused to process filed grievance.  Union engaging
14   in conduct which amounts to negligent representation of Grievant and retaliation
15   against Grievant.

16  Steckbeck Depo. 152:6-16,154:11-14 & Exh. 11; Bledsoe Depo. 96:1-14, 97:2-18 & Exh. 44;

17  Alba Depo. 84:23-86:9 & Exh. 32.

18    30.    An agent of the National Labor Relations Board investigated Plaintiffs' unfair

19  labor practice charges.  Steckbeck Depo. 157:22-158:3, 181:3-182:10; Bledsoe Depo. 99:22-

20  100:9; Alba Depo. 89:16-21.  Steckbeck gave an affidavit to the National Labor Relations

21  Board.  Steckbeck Depo. 155:9-156:16.  Local 165 provided the National Labor Relations

22  Board with a letter explaining the facts and supporting documentation.  Loebig Aff.¶ 22 & Exh.

23  G.

24    31.    Based on the results of that investigation, Region 28 of the National Labor

25  Relations Board dismissed Plaintiffs' unfair labor practice charges because "there is insufficient

26  evidence to establish that the Union has violated the Act in any manner encompassed by the

27  allegations of the charge."  Steckbeck Depo. 182:16-24 & Exh. 13; Bledsoe Depo. 101:16-102:4

28  & Exh. 45; Alba Depo. 89:22-90:14 & Exh. 33.

**MEMORANDUM OF LAW IN SUPPORT OF BARTENDERS UNION LOCAL 165'S MOTION
FOR SUMMARY JUDGMENT**

32.     Each of the Plaintiffs appealed the dismissal of the unfair labor practice charges to the National Labor Relations Board's Office of Appeals. Steckbeck Depo. 184:6-16 & Exh. 14; Bledsoe Depo. 102:5-23 & Exh. 46; Alba Depo. 90:15-17.  The Office of Appeals denied Plaintiffs' appeals and upheld the dismissals, giving the following reason for its decision:

> Your appeal from the Regional Director's refusal to issue complaint has been carefully considered.  The appeal is denied.  The Regional investigation disclosed that according to the collective bargaining agreement, seasonal employees are to be terminated at the end of the pool season by the Employer.  The Employer generally abided by this provision, with the exception that it did not terminate three seasonal employees, which included the Charging Party.  Such action by the Employer occurred without the knowledge of the Union and was not disclosed until an issue regarding moving regular bartenders from the hotel to the pool was discussed during a meeting.  Soon after, the Union and Employer entered into a Memorandum of Agreement ("MOA") which provided that 2013 seasonal employees would be terminated at the end of the pool season.  Therefore, consistent with the MOA, the three individuals were terminated and a grievance was soon filed regarding that matter.  The grievance was eventually withdrawn by the Union as having no merit.

Steckbeck Depo. 185:8-19 & Exh. 15; Bledsoe Depo. 103:1-9 & Exh. 47; Alba Depo. 90:22-92:12 & Exh. 34.  The dismissal letter accurately states the facts.  Bledsoe Depo. 103:14-16.

**F.     Plaintiffs' Theory**

33.     Plaintiffs' theory is that Local 165 violated its duty of fair representation to Plaintiffs by "refus[ing] to process and purse the grievance submitted in August, 2013." Sec. Set Interrog. to Steckbeck, Bledsoe and Alba, No. 1.

34.     Plaintiffs contend that Local 165 was required to pursue their grievance because, according to Plaintiffs, they were not seasonal employees.  Sec. Set Interrog. to Steckbeck, Bledsoe and Alba, Nos. 2 & 3.  Specifically, Plaintiffs contend that because Aria violated Article 10.03 of the Collective Bargaining Agreement by allowing Plaintiffs to continue working after the end of the pool season in 2011 and 2012, Plaintiffs should have been allowed to continue to do so for as long as they worked at Aria.  Steckbeck Depo. 114:1-24, 183:13-18; Bledsoe Depo. 91:12-14.

//

**MEMORANDUM OF LAW IN SUPPORT OF BARTENDERS UNION LOCAL 165'S MOTION FOR SUMMARY JUDGMENT**

35.     The only section of the Collective Bargaining Agreement that Aria violated is Article 10.03.  Bledsoe 94:1-9.

36.     Plaintiffs interpret Article 10.03 of the Collective Bargaining Agreement differently than Local 165 does.  Plaintiffs believe that Local 165 should adopt Plaintiffs' interpretation of the Collective Bargaining Agreement.  Steckback Depo. 114:1-24; 164:15-25, 183:20-25; Loebig Aff. ¶¶ 7, 21; Sec. Set Interrog. to Steckback, Bledsoe and Alba, No. 3

37.     Plaintiffs contend that Local 165 was negligent because Local 165 failed to process their grievance.  Bledsoe Depo. 99:4-10; Sec. Set Interrog. to Steckback, Bledsoe and Alba, No. 2.

## ARGUMENT

**A.     Summary Judgment Standard**

Summary judgment is warranted if "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party meets its burden by presenting evidence which, if uncontroverted, would entitle it to a directed verdict at trial.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue for trial.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 250-51 (1986).  The nonmoving party must show "significant probative evidence tending to support the complaint," *T.W. Elec. Svc., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987); which requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 495 U.S. 574, 586 (1986).

**B.     Local 165 did not violate its duty of fair representation to Plaintiffs by deciding that the August 2013 grievance was invalid**

Plaintiffs' sole cause of action is for breach of the duty of fair representation.  Sec. Amended Complaint, ¶¶ 13, 18-21.  Plaintiffs' theory is that Local 165 violated its duty of fair representation to them because Local 165 did not pursue the grievance that Plaintiffs submitted in August 2013.  (Sec. Set Interrog. to Steckback, Bledsoe and Alba, No. 1).

//

1    Plaintiffs' claim is necessarily a "hybrid" suit for breach of the duty of fair representation

2    under § 8(b) of the National Labor Relations Act, 29 U.S.C. § 158(b) and breach of the

3    Collective Bargaining Agreement under § 301 of the Labor Management Relations Act, 29

4    U.S.C. § 185.  This is because these two claims are two claims are "inextricably

5    interdependent." *DelCostello v. Teamsters*, 462 U.S. 151, 164-65 (1983).  To prevail on a duty

6    of fair representation claim arising out a union's handling of a grievance, a plaintiff must show

7    both that the employer violated the collective bargaining agreement, *Id.*; *Hines v. Anchor Motor*

8    *Freight, Inc.*, 424 U.S. 554, 570-71 (1976); and that the union processed the employee's

9    grievance in a way that was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S.

10   171, 190 (1967).  This standard gives unions "wide discretion to act in ways they perceive to be

11   in their members' best interests." *Peterson v. Kennedy*, 771 F.2d 1244, 1253 (9th Cir. 1985).

12   Standing alone, a union's failure to pursue a grievance does not constitute a breach the duty of

13   fair representation. *Vaca*, 386 U.S. 171, 191 (1967); *Castelli v. Douglas Aircraft Co.*, 752 F.2d

14   1480, 1482 (9th Cir.1985).

15   Here, Plaintiffs claim do not claim that Local 165 acted in bad faith or discriminated

16   against them. (Sec. Set Interrog. to Steckbeck, Bledsoe and Alba , No. 1).  Rather, Plaintiff take

17   issue with how Local 165 handled their grievance. First, Plaintiffs contend that they were not

18   seasonal employees, and that Local 165 should have done an investigation to determine that fact.

19   According to Plaintiffs, Local 165 was negligent in this regard. (Sec. Set Interrog. to Steckbeck,

20   Bledsoe and Alba , No. 2).  Second, Plaintiffs contend that Local 165 "negligently interpreted

21   the existing collective bargaining agreement regarding the definition of a seasonal pool worker"

22   because, according to them, the collective bargaining agreement "clearly states that a seasonal

23   employee does not work year around, which we did for multiple years." (Sec. Set Interrog. to

24   Steckbeck, Bledsoe and Alba, No. 3).  Neither argument has any merit, as shown in the

25   following subsections.

26   **1.    Local 165 knew the facts so no investigation was necessary**

27   Plaintiff are correct when they point out that Local 165 did not conduct a factual

28   investigation before it decided that Plaintiffs' grievance was invalid, but this did not violate the

**MEMORANDUM OF LAW IN SUPPORT OF BARTENDERS UNION LOCAL 165'S MOTION
FOR SUMMARY JUDGMENT**

duty of fair representation.  Ordinarily, a union's duty of fair representation includes some minimal investigation, but the thoroughness required varies with the circumstances of the particular case.  *Evangelista v. Inland Boatmen's Union of the Pacific*, 777 F.2d 1390, 1395 (9th Cir. 1985).  If the facts are clear or more extensive investigation would not cause the union to alter its decision, then a union may forego such investigation.  *Id.* at 1395-96; *see also Stevens v. Moore Business Forms, Inc.*, 18 F.3d 1443, 1448 (9th Cir. 1994).

Here, it was not necessary for Local 165 to do any investigation.  Plaintiffs cannot identify any facts material to the disposition of their grievance that Local 165 did not know when it concluded that the grievance was invalid.  Local 165's President Lana Loebig handled the grievance, and she was familiar with the facts because she learned them just a few months earlier while negotiating the Memorandum of Understanding.  Plaintiffs assert that if Loebig has done an investigation, she would have learned that they were not seasonal employees.  But the characterization of Plaintiffs as "seasonal employees" or "not seasonal employees" is a legal conclusion, not a factual determination.  Plaintiffs contend that they were not seasonal employees because they worked after the pool season ended in 2011 and 2012.  Loebig was aware of that fact – when Plaintiffs worked – but still decided that the grievance was invalid.

## 2. A union's exercise of judgment about how to interpret a collective bargaining agreement cannot violate the union's duty of fair representation

Plaintiffs' real complaint is how Local 165 interpreted the Collective Bargaining Agreement.  Plaintiffs admit that they were each hired as Seasonal Pool Bartenders.  Article 10.03 of the Collective Bargaining Agreement permits Seasonal Pool Bartenders to work only until the end of the pool season.  Plaintiffs' theory is that because they were permitted work beyond the end of each pool season in 2011 and 2012 in violation of Article 10.03, they were transformed from Seasonal Pool Bartenders into non-seasonal bartenders.  This is demonstrated well by Plaintiff David Steckbeck's deposition testimony:

> Q.   So when you were laid off at the end of the season in 2010, that was in conformity and compliance with the Collective Bargaining Agreement?
>
> A.   Absolutely.

**MEMORANDUM OF LAW IN SUPPORT OF BARTENDERS UNION LOCAL 165'S MOTION FOR SUMMARY JUDGMENT**

Q.     And then when you were allowed to continue working after the end of the pool season in 2011 and 2012, that was in violation of the Collective Bargaining Agreement?

A.     Yes, ma'am.

Q.     But your theory was, your belief was, because the hotel had violated the Collective Bargaining Agreement in 2011 and 2012 by allowing you and the other plaintiffs to continue working through the off season, the winter season, that you should be allowed to do that for the rest of your time at Aria?

A.     Yes, ma'am.

Q.     Okay.  And that's your basic case?

A.     Yes, ma'am.

Q.     Okay.  And your complaint is the Union didn't adopt your position?

A.     They denied us representation.

Q.     By not adopting your position?

A.     I believe I understand what you are saying, and yes.

Steckbeck Depo. 114:1-24.

Local 165 has a different interpretation of how the Collective Bargaining Agreement applied to Plaintiffs.  According to Local 165's view, since Plaintiffs were hired as Seasonal Pool Bartenders, they remained Seasonal Pool Bartenders even though Aria permitted them to work past the end of the pool season in violation of Article 10.03.  Local 165's interpretation is based on Articles 10 and 20.04, which require that non-pool season work be assigned to nonseasonal bartenders according to seniority.  Not assigning that work to nonseasonal bartenders violated the contractual rights of those employees, to whom Local 165 also owes a duty of fair representation.

//

//

//

MEMORANDUM OF LAW IN SUPPORT OF BARTENDERS UNION LOCAL 165'S MOTION FOR SUMMARY JUDGMENT

Local 165 did not violate its duty of fair representation when it rejected Plaintiffs' theory. "A union representative is entitled to decline to put forward an interpretation of the collective bargaining agreement which he and his union reasonably believe is incorrect." *Conkle v. Jeong*, 73 F.3d 909, 915-16 (9th Cir. 1995).

It is not for the Court to decide whether Local 165's interpretation of Article 10.03 is correct. Courts do not scrutinize a union's decisions about the merits of a grievance, *Slevira v. Western Sugar Co.*, 200 F.3d 1218, 1221 (9th Cir. 2000); and misinterpretation of a collective bargaining agreement cannot be the basis for a duty of fair representation claim. "A union's conduct may not be deemed arbitrary simply because of an error in evaluating the merits of a grievance . . . ." *Salinas v. Milne Truck Lines, Inc.*, 846 F.2d 568, 569 (9th Cir. 1988). This is very well-established law. *See, e.g., Stevens v. Moore Business Forms, Inc.*, 18 F.3d 1443, 1447 (9th Cir. 1994) ("[T]he grievance process need not be error free – to constitute a breach of the duty of fair representation, more than a mere error of judgment must occur."); *Conkle*, 73 F.3d at 916 (a union is not liable because it makes an error evaluating the merits of a grievance). "Mere negligence on the part of the union does not constitute a breach of the duty of fair representation." *Slevira*, 200 F.3d at 1221; *see also Castelli*, 752 F.2d at 1482 (same).

### 3.    Plaintiff's grievance does not seek a remedy for Aria's breach of the Collective Bargaining Agreement

This is an additional problem with Plaintiff's theory. "[A] breach of contract by the employer is a necessary prerequisite to a claim against a union for a breach of the union's duty of fair representation." *Cole v. International Union*, 533 F.3d 932, 937 (8th Cir. 2008). The reason why is because if the employer has not breached the collective bargaining agreement, there is no grievance for the union to pursue. Thus, an employee's claims against the employer and the union "are interlocked: neither claim is viable if the other fails." *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 & 1243 (7th Cir. 1997). Here, the only way that Plaintiffs claim that Aria violated the collective bargaining agreement was by allowing Plaintiffs to work past the end of the 2011 and 2012 pool season in violation of Article 10.03. This contract violation benefited Plaintiffs, so in their grievance, Plaintiffs did not seek a remedy for

it. Rather, Plaintiffs wanted Local 165 to negotiate a special benefit for them to allow them to continue to work in violation of Article 10.03 and in violation of the seniority rights of nonseasonal bartenders.

Since Plaintiffs do not seek a remedy for Aria's breach of the collective bargaining agreement, their hybrid duty of fair representation/ § 301 claim must be dismissed.

**4.      The National Labor Relations Board already rejected Plaintiffs' theory**

A violation of the duty of fair representation is also an unfair labor practice that may be adjudicated by the National Labor Relations Board. *Vaca*, 386 U.S. at 177-78. Before filing this suit, Plaintiffs presented the same case they are pursuing here to National Labor Relations Board. The Regional Office of the National Labor Relations Board dismissed Plaintiffs' unfair labor practice charges, and the dismissals were upheld on appeal. While this legal determination is not binding on the Court, it is persuasive.

**C.      Local 165 did not violate its duty of fair representation to Plaintiffs by entering into the Memorandum of Agreement**

Plaintiffs have not asserted that Local 165 violated its duty of fair representation to Plaintiffs by negotiating the Memorandum of Agreement. (Sec. Set Interrog. to Steckbeck, Bledsoe and Alba, No. 1). If made, such an argument would lack merit.

The standard established in *Vaca v. Sipes* – that a union breaches its duty of fair representation only if its actions are "arbitrary, discriminatory, or in bad faith" – applies equally to claims that a deal that a union makes with an employer represents a breach of the union's duty to bargaining unit employees. *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67, 77 (1991). An agreement negotiated by a union violates the duty of fair representation only if it is so far outside a "wide range of reasonableness" that it can be deemed irrational. *O'Neill*, 499 U.S. at 78 (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). This is a rigorous standard:

> Congress did not intend judicial review of a union's performance to permit the court to substitute its own view of the proper bargain for that reached by the union. Rather, Congress envisioned the relationship between the courts and labor unions as similar to that between the courts and the legislature. Any substantive examination of a union's performance, therefore, must be highly deferential,

recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.

*O'Neill*, 499 U.S. at 78.

The same "wide range of reasonableness" applies even when the union makes decision about how to allocate the rights of different groups of employees:

> Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.
>
> Compromises on a temporary basis, with a view to long-range advantages, are natural incidents of negotiation. Differences in wages, hours and conditions of employment reflect countless variables. Seniority rules governing promotions, transfers, layoffs and similar matters may, in the first instance, revolve around length of competent service. Variations acceptable in the discretion of bargaining representatives, however, may well include differences based upon such matters as the unit within which seniority is to be computed, the privileges to which it shall relate, the nature of the work, the time at which it is done, the fitness, ability or age of the employees, their family responsibilities, injuries received in course of service, and time or labor devoted to related public service, whether civil or military, voluntary or involuntary.
>
> The National Labor Relations Act, as amended, gives a bargaining representative not only wide responsibility but authority to meet that responsibility.

*Ford Motor Co. v. Huffman*, 345 U.S. 330, 338-39 (1953) (internal citations omitted); *see also Humphrey v. Moore*, 375 U.S. 335, 349-50 (1964) ("We are not ready to find a breach of the collective bargaining agent's duty of fair representation in taking a good faith position contrary to that of some individuals whom it represents nor in supporting the position of one group of employees against that of another. . . . Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance process, so it must be free to take a position on the not so frivolous disputes. Nor should it be neutralized when the issue is chiefly between two sets of employees. Conflict between employees represented by the same union is a recurring

15

fact.  To remove or gag the union in these cases would surely weaken the collective bargaining and grievance processes."); *Emporium Capwell Co. v. Western Addition Community Organization*, 420 U.S. 50, 62 (1975) ("In establishing a regime of majority rule, Congress sought to secure to all members of the unit the benefits of their collective strength and bargaining power, in full awareness that the superior strength of some individuals or groups might be subordinated to the interests of the majority.").

The Memorandum of Agreement is well-within this "wide range of reasonableness." Local 165 took advantage of Aria's desire to use model bartenders in some casino bars to accomplish Local 165's long-standing objective of eliminating use of the Seasonal Pool Bartender classification.  Local 165 believed that eliminating use of the Seasonal Pool Bartender classification benefited its membership as a whole because seasonal employees are not guaranteed continued employment or re-employment from year-to-year and do not receive the same benefits as non-seasonal bartenders.

Importantly, the Memorandum of Agreement did not eliminate any rights that the Seasonal Pool Bartenders who were employed in 2013 (when the Memorandum of Agreement was negotiated) previously had.  The Memorandum of Agreement allowed the Seasonal Pool Bartenders who were working in 2013 – including Plaintiffs -- to continue working through the end of the 2013 pool season, and required that Aria terminate their employment only at the end of the 2013 pool season.  This was not a change.  It is exactly what Article 10.03 of the Collective Bargaining Agreement required.

The Memorandum of Agreement did eliminate Aria's ability to hire Seasonal Pool Bartenders in 2014, and instead established a seniority-based bidding system for allocating work at the pool to the non-seasonal bartender classification.  But that did not take any rights from Plaintiffs (or the other seasonal bartenders) because the Collective Bargaining Agreement does not give seasonal employees a contractual right to be rehired each year.

Plaintiffs might speculate that Local 165 could have negotiated special treatment for them because they were apparently well-liked by Aria management.  Such speculation would be

**MEMORANDUM OF LAW IN SUPPORT OF BARTENDERS UNION LOCAL 165'S MOTION FOR SUMMARY JUDGMENT**

irrelevant.  The duty of fair representation does not require a union to negotiate favorable treatment for some employees, even if those employees are favored by management.

**CONCLUSION**

For all of the foregoing reasons, Local 165's motion for summary judgment should be granted and Plaintiffs' Second Amended Complaint against Local 165 should be dismissed.

Dated:  September __22__, 2015

McCRACKEN, STEMERMAN & HOLSBERRY

Kristin L. Martin

*Attorneys for Defendant Bartenders Union Local 165*

**MEMORANDUM OF LAW IN SUPPORT OF BARTENDERS UNION LOCAL 165'S MOTION FOR SUMMARY JUDGMENT**